UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

INSURANCE DISTRIBUTION
NETWORK, INC.

Case No. 1:04-cv-466

        Plaintiff,

U.S. Magistrate Judge Timothy S. Black

vs.

STEVEN M. MARIANO,
FOUNDATION INSURANCE COMPANY,
TARHEEL INSURANCE MANAGEMENT
COMPANY, and THE TARHEEL GROUP,
INC., *et al.*,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This civil action is currently before the Court upon the amended motion for summary judgment of defendant Foundation Insurance Company (doc. 107) and the amended motion for summary judgment of defendants Steven M. Mariano ("Mariano"), Tarheel Insurance Management Company, and the Tarheel Group, Inc. (doc. 108), and the parties' responsive memoranda (docs. 111 and 117).[1] The parties have consented to disposition by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 31).

---

[1] Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All reasonable inferences are drawn in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

I.      **Statement of the Case.**

The civil lawsuit arises out of a contract referred to as a Risk Sharing Agreement entered into between plaintiff Insurance Distribution Network, Inc ("IDNI") and defendant Foundation Insurance Company ("Foundation") on September 15, 2001.[2] Foundation was an insurance company that sold insurance under policies underwritten by Clarendon National Insurance Co. ("Clarendon"). Plaintiff IDNI is an insurance brokerage company that sells insurance policies upon which IDNI can earn commissions.

The purpose of this contract was for plaintiff to manage the losses of its workers compensation policies it submitted, exposing it to a much higher liability, but at the same time, providing the potential for a larger profit to plaintiff from policies placed in Foundation's captive program. The Risk Sharing Agreement sets forth a mathematical formula, which, when applied to the premiums paid and losses or expenses incurred, results in a figure: either a positive amount, in which case plaintiff receives a portion of premiums as an additional profit, or a negative amount, in which case plaintiff would have to pay additional money to Foundation. Here, because the calculation resulted in a positive amount, plaintiff was contractually entitled to a refund from Foundation of premiums paid on the accounts placed in Foundation's captive program.[3]

---

[2] A copy of the Risk Sharing Agreement is attached to the third amended complaint as Exhibit B (*see* doc. 92-4.).

[3] *See* deposition of John Campbell at p. 73 (attached to defendants' amended motion for summary judgment as Exhibit A) (doc. 107-1).

2

In December 2002, Clarendon terminated its relationship with Foundation such that plaintiff could no longer place its policies in Foundation's captive program. The decision to end the relationship was made by Clarendon. The first notice of Clarendon's potential cancellation of the program came in September 2002. The official notice terminating the program was by letter dated December 2, 2002.[4]

At this point, plaintiff had placed approximately $72,000 out of a represented $1 million in premiums into the program. At the same time, pursuant to the Risk Sharing Agreement, plaintiff had provided a letter of credit to Foundation in the amount of $240,000. Plaintiff was initially the applicant of the letter of credit, and Foundation was initially the beneficiary of the letter of credit. The applicant and/or beneficiary of the letter of credit were eventually amended three times, such that ultimately Foundation became the applicant of the letter of credit, and Clarendon became the beneficiary.[5]

Finally, as part of the Risk Sharing Agreement, once the policies expired, plaintiff was entitled to any balance that was not used to pay claims, expenses or administrative fees. According to audits, the amount Foundation owes to plaintiff, pursuant to the terms and conditions of the Risk Sharing Agreement, is between $31,000 and $42,000.[6]

---

[4] *See* third amended complaint ¶ 28 (doc. 92); *see also* Campbell Depo. at p. 136 (doc. 107, Ex. A ); *see also* Green Depo. at pp. 19-20 (doc. 107, Ex. C).

[5] *See* third amended complaint ¶¶ 26-28 (doc. 92).

[6] *See* Campbell Depo. at pp. 98-99 (doc. 107, Ex. A).

3

## II.   The Breach of Contract Claim Against Foundation

The only parties to the contract were plaintiff IDNI and defendant Foundation. Alas, Foundation was declared insolvent and liquidated by Order of the Court of Common Pleas of Richmond County, South Carolina on March 24, 2006, pursuant to the South Carolina Insurance Rehabilitation and Liquidation Act.[7] However, plaintiff IDNI chose not to submit a claim with the Receiver for Foundation in the South Carolina proceedings, which claim was plaintiff IDNI's exclusive remedy against Foundation, as a matter of law.[8]

Nevertheless, although plaintiff only contracted with Foundation, plaintiff has now alleged that Foundation's principal, Steven M. Mariano, and allegedly related corporations, The Tarheel Group, Inc. and Tarheel Insurance Management Company, are subject to liability under theories of fraud, corporate veil piercing, and alter ego.[9]

Plaintiff admits that its "breach of contract claims are directed against Foundation Insurance Company, which is now defunct," and that "Foundation was liquidated pursuant to an order of the South Carolina Department of Insurance." Accordingly, the

---

[7] *See* defendants' amended motion for summary judgment at p. 3 (doc. 108) and third amended complaint at ¶ 2 (doc. 92).

[8] *See* South Carolina Code Ann. 38-27-430.

[9] Two years after first filing suit, plaintiff added Tarheel Insurance Management Company and the Tarheel Group as defendants (*see* doc. 66).

4

Court hereby grants summary judgment to Foundation on its motion (doc. 107), denying plaintiff any recovery against Foundation, plaintiff having failed to pursue its exclusive remedy against Foundation in the South Carolina liquidation proceedings.[10]

### III. The Breach of Contract Claim Against the Other Defendants.

Plaintiff's only other avenue for recovery of relief on its breach of contract claim is to posit that defendants Mariano, the Tarheel Group, and Tarheel Insurance Management Company are liable to plaintiff for Foundation's breach of contract based upon the doctrines of piercing the corporate veil and/or alter ego liability. However, the material facts are undisputed as to the truths that Foundation is a separate legal entity, that there is no evidence that Foundation did not observe corporate formalities, and that there is no evidence that the members of Foundation acted in a self-serving manner in regards to Foundation's property, and that there is no evidence that any of the additionally named defendants are the alter egos of Foundation.[11]

Accordingly, plaintiffs have no cognizable remedy for their breach of contract claim against any named defendant, and defendants' motions for summary judgment against plaintiff on its breach of contract claim are granted.

---

[10] *See* Notes 7-8, *supra.*

[11] *See* Affidavit of Steven M. Mariano (doc. 102) at ¶¶ 5, 6, 7, & 8.

## IV. The Fraud Claims

Nevertheless, plaintiffs further seek to prosecute claims sounding in fraud against defendants Mariano, the Tarheel Group, and Tarheel Insurance Management Company.

Before addressing these fraud claims, the Court must determine the appropriate choice of law to apply. Defendants argue that South Carolina law governs the fraud claims because the contract provides that it will be governed by South Carolina law. Fraud, however, sounds in tort and the choice of law is not governed by the parties' contract.[12]

When a federal court presides over a case based on diversity jurisdiction, as here, the forum state's choice of law provisions apply.[13] Thus, here, the fraud claims must be separately analyzed under Ohio's choice of law rules, which rules adopt the analysis set forth in the Restatement (Second) Conflict of Laws.[14]

Under the Restatement's choice of law analysis, if a defendant's representations were made in the same jurisdiction as the plaintiff's actions in reliance, then that state's law will generally govern. Restatement (Second) Conflict of Laws § 148(1). But if the act constituting plaintiff's reliance occurred in a state other than that where the defendant made the representation, as occurred here, the Restatement supplies several factors to

---

[12] *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818 (6th Cir. 1990).

[13] *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 501 (6th Circ. 2003).

[14] *Macurdy*, 894 F.2d at 821 (citing *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286 (Ohio 1984)).

6

apply in deciding upon the choice of law to apply. *Id.* at § 148(2).[15]

Here, because plaintiff's actions in reliance occurred in Indiana, and because plaintiff received Mariano's representations in Indiana, and because plaintiff's principal place of business is in Indiana, Indiana law governs plaintiff's fraud claim.

Indiana law imposes personal liability on corporate officers who participate in a tort:

> It is well settled that a corporate officer cannot escape liability for fraud by claiming that he acted on behalf of a corporation when the corporate officer personally participated in the fraud.

*Gable v Curtis*, 673 N.E.2d 805, 809 (Ind. Ct. App. 1996).

### IV-A. The Fraud Claims Against Mariano

Here, plaintiff alleges that Mariano falsely represented to plaintiff than amending the letter of credit to reflect Foundation as the applicant was necessary as part of plaintiff's obligations and would not negatively affect plaintiff's liability. This representation is evidenced by letter faxed to plaintiff stating that making Foundation the applicant on plaintiff's letter of credit "is actually better that way in the fact that it makes us solely liable for any funds drawn down on, and it keeps you specifically dealing with

---

[15] These factors include: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. *Id.* at §148(2).

7

Foundation and not Clarendon." Whether or not Mariano falsely represented the effects upon plaintiff of the third amendment to the letter of credit requires resolution of issues of material fact which are in dispute.

Plaintiff also alleges that Mariano falsely represented that Clarendon would no longer accept plaintiff's policies in 2002. More specifically, plaintiff alleges that Mariano falsely told plaintiff in January 2002 that Clarendon had canceled its program with Foundation and that IDNI could therefore no longer place any policies in the captive program. Plaintiff further alleges that the real truth was that Clarendon and Foundation continued to have a treaty in place from January 1, 2002 through December 31, 2002, and that there is no evidence that Clarendon ever advised Mariano that plaintiff could not continue to place policies in the Foundation program for the entire effective time period. The nub of plaintiff's allegations is therefore that Mariano falsely represented that Clarendon had terminated its program before it actually did and thereby prevented plaintiff from placing additional policies into the potentially lucrative Clarendon program. Whether or not any of this is true requires resolution of issues of material fact which are in dispute.

Likewise, whether or not plaintiff's reliance on Mariano's alleged representations was reasonable requires resolution of issues of material fact which are genuinely in dispute.

8

As to damages, plaintiff alleges that it can prove economic harm arising out of Mariano's alleged fraud. Plaintiff alleges that it was required to put up $400,000 worth of collateral in order to obtain the $240,000 letter of credit and that the $240,000 letter of credit was intended to secure 24% of the expected $1 million in premiums from policies that plaintiff had already identified and selected to place in the Foundation program. Plaintiff claims that because Mariano falsely told plaintiff that it could no longer place policies in the program after plaintiff had placed only about $76,000 worth of these policies in Foundation's program, plaintiff was allegedly harmed. First, plaintiff was prevented from realizing a return of 56% of the $1 million in premiums that it would have otherwise placed in the Foundation program (less claims made against those policies), but for Mariano's false statement. And second, by inducing plaintiff to amend its letter of credit a third time, Mariano effectively caused plaintiff's $400,000 in collateral that was securing plaintiff's obligations to also secure Foundation's obligations. That is, Mariano's fraudulent statement caused plaintiff to bind its $400,000 collateral longer than required, denying plaintiff the use of its collateral for other potential investments, including other captive insurance programs. Third, the Risk Sharing Agreement required plaintiff to collateralize only 24% of its obligations. By inducing plaintiff to refrain from placing policies in the Foundation program and to amend its letter of credit the third time, Mariano caused plaintiff to use more collateral than the Risk Sharing Agreement required. That is, by inducing plaintiff to make the third amendment to the letter of

9

credit, Mariano effectively prevented plaintiff for releasing the difference so that plaintiff could use the collateral elsewhere. While the Court is not yet overly impressed with plaintiff's claims for damages, plaintiff has proffered sufficient evidence to require resolution by trial of the disputed material facts on the issue of its damages, if any, if liability be found in the first instance.

Accordingly, defendants' motion for summary judgment is denied as to the fraud claims against Mariano.

### IV-B. Fraud Claims Against Defendants Other Than Mariano

Plaintiff's claims for fraud against Tarheel Group, Inc. and Tarheel Management Company, based on the doctrines of alter ego and/or piercing the corporate veil, fail as a matter of law upon the undisputed material facts. As stated *supra*, there is no doubt under the undisputed material facts that Foundation is a separate legal entity, there is no evidence that Foundation did not observe corporate formalities, there is no evidence that the members of Foundation acted in a self-serving manner in regard to Foundation's property, and there is no evidence that Mariano, Tarheel Group, Inc., and/or Tarheel Management Company are the alter egos of Foundation.

Accordingly, defendants' motions for summary judgment are granted to the degree that all claims against Foundation, Tarheel Group, Inc., and/or Tarheel Management Company are hereby dismissed as a matter of law upon the undisputed material facts.

## V. Conclusion

Defendant Foundation's amended motion for summary judgment (doc. 107) is GRANTED. The additional defendants' amended motion for summary judgment (doc. 108) is GRANTED in part and DENIED in part, to wit: all claims against all defendants, but for the fraud claim against defendant Mariano, are hereby dismissed, there being no genuine issue of material fact in dispute as to these claims, and defendants are entitled to entry of judgment as a matter of law upon these claims.

At trial, plaintiff is entitled to seek to evidence that Mariano is individually liable for fraudulent acts or false representations, if any, in which he participated.

**IT IS SO ORDERED.**

Date: 2/26/08

Timothy S. Black
United States Magistrate Judge